## BURLEIGH and al. *vs.* BENNETT.

Where the land of a ward was sold by his guardians, under a supposed license from the court of probate, and the proceeds of the sale were accounted for in a settlement of the guardians' accounts in said court, and a decree was made thereon---*held*, that an action for money had and received, to recover the money back of the ward, would lie where the ward had subsequently brought an action, and had vacated the sale of the land, for the reason that the license of sale was defective and void.

THIS was an action of assumpsit for $500.00 money had and received, and $500.00 money paid, laid out and expended.

The plaintiffs, in their specification, claimed to recover $425.00, with interest on the same from October 10, 1832.

It appeared that the plaintiffs were formerly guardians of the defendant, who is a *non compos*, and having paid sundry sums for the debts and support of their said ward, the plaintiffs, on the tenth day of November, 1836, petitioned the judge of probate for the county of Rockingham for license to sell certain real estate of the defendant, set forth and described in the petition : That notice was ordered to be published, and was published in the N. H. Gazette, that the petition would be taken into consideration at a probate court to be holden at Exeter, on the Wednesday following the second Tuesday of January, 1831 : That on the day appointed for taking said petition into consideration, the plaintiffs, with Paul Chapman, Jun. appeared at the probate court, for the purpose of procuring license to sell said real estate ; and after they had been before the probate court on the subject of said petition, the said Chapman went into the probate court and enquired for the license, and the then register of probate gave him a paper folded up, and gave him directions how to proceed with the sale, which paper the said Chapman gave to the plaintiffs : That the plaintiffs advertised and sold the land described in said petition,

at public auction, for $402.50, and gave a deed for the same to Paul Chapman, on the 18th day of February, 1831, in which they covenanted that they were duly licensed to sell said real estate ; and the said Paul Chapman soon after gave a deed of said land to the wife of Paul Chapman, Jr., who gave his note to the plaintiffs for said sum of $402.50, with an agreement that the claims of the said Chapman, Jr., against the plaintiffs, amounting to about $350, should be set off against said note : That on the tenth day of October, 1832, the plaintiffs settled their guardianship account before the judge of probate, in which they charged themselves with $402.50, received on account of the sale of said land to said Chapman, and with $22.50 for interest on the same ; and those sums, amounting to $425.00, were allowed against them and passed to the credit and benefit of the defendant ; on which settlement, by charging the plaintiffs with said $425.00, a balance was found against them of $104.82, which has not been paid : That the plaintiffs immediately afterwards resigned their trust, as guardians of the defendant, and Thomas Cheswell was appointed his guardian on the 14th day of November, 1832 : That the defendant, by Thomas Cheswell, his guardian, on the 27th day of December, 1832, commenced an action against Paul Chapman, Jr. to recover possession of said land ; and at the court of common pleas, holden on the third Tuesday of January, 1834, the defendant, by said Cheswell his guardian, recovered judgment against the said Chapman, Jr. for said land, and a writ of possession issued thereon April 7th, 1834 ; and the said Cheswell, in behalf of his said ward, took possession of said land, and has had possession thereof ever since : That the said Paul Chapman, Jr. never paid said note, or any part thereof, which he had given the plaintiffs for said land, but refused to pay the same ; and after the said land was taken from him, called on the plaintiffs to pay him the claims which he held against them, which they paid.

It appeared that the paper handed to the plaintiff as a li-

cense at said probate court, was a license in common form, with the seal of the probate court upon it, filled out in the hand writing of the then register of probate, authorizing the plaintiffs to sell the real estate of the defendant, describing the land in the same manner as it was described in said petition, and stating that public notice had been given agreeably to order of court, and sufficient evidence lodged in court that the sale of said premises would conduce to the interest of said ward ; but the license was not dated, and was not signed by the judge of probate.

The original petition and order of court could not be found, and the plaintiffs introduced the register of probate, who testified that he had made careful examination of the files and records of the probate office, and that he could not find any petition of the plaintiffs as guardians of John Bennett, for license to sell any part of his real estate ; and that there was not on said records any license for such sale.

The plaintiffs then introduced a witness to prove that there was such a petition, and that the same was presented at the probate court, and an order of notice written on the same by the register of probate, and the petition and order carried by him to the N. H. Gazette office, to be published.

The plaintiffs also offered the N. H. Gazette, published November 23d, 1830, which contained the petition of the plaintiffs for a license to sell certain real estate of the defendant described in the petition, with an order of notice by the register of probate, that the petition would be taken into consideration on the Wednesday following the second Tuesday of January next, and that notice thereof be given by publishing the same in the N. H. Gazette.

To this evidence the defendant objected, but the court admitted the evidence.

The court submitted to the jury the question, whether the plaintiffs knew that they were acting under a void authority when they sold said land ; and the jury returned that the

plaintiffs did not know that they were acting under a void authority at said sale. A verdict was thereupon taken for the plaintiffs for $536.50, being the amount of the $425, with interest from October 20, 1832, subject to be reduced, or enlarged, or set aside and a new trial granted, or a verdict entered for the defendant, according to the opinion of the court upon the foregoing case.

*Sullivan*, for the defendant, contended that bringing this action was treating the decree of the judge of probate as a nullity ; that a judgment or decree is conclusive until set aside, or disaffirmed, and that this cannot be done collaterally. 1 *Phil. Ev.* 222 *and* 3 ; 8 *Johns.* 470, *Cobb* vs. *Curtis ;* 9 *Johns.* 232, *White* vs. *Ward and al.*

The judge of probate had authority to make the decree ; and the question is now the same as on the hearing before him. The merits of the judgment cannot be overhauled. 2 *Burr.* 1009 ; 17 *Mass.* 396, *Loring* vs. *Mansfield ;* 1 *Day* 170, *Bush* vs. *Sheldon ;* 7 *Pick.* 1, *Jennison and al.* vs. *Hapgood ;* and this applies as well to courts not of record as of record. 1 *Stark. Ev.* 211 *and* 12.

*Stickney*, and *Christie*, for the plaintiffs.

UPHAM, J. In this case it is contended that the plaintiffs are not entitled to recover back any portion of the amount charged against them in account with their ward, for the reason that judgment has been entered up against them for said sums, by decree of the probate court.

There is no doubt, where money has been recovered by the judgment of a court having competent jurisdiction, and the judgment has been satisfied, that the debtor cannot afterwards recover back the amount paid in another action, while such judgment remains in force. The case of *Loring* vs. *Mansfield*, 17 *Mass.* 394, is to this effect, and numerous authorities are there cited ; and were it the necessary result that these authorities would be overruled, or that the prin-

ciple sustained by them would be subverted by sustaining the present action, we should have no hesitation in holding that this suit could not be maintained.

But the ground of recovery in this case, on the part of the plaintiffs, arises from matter entirely subsequent to the decree against them. That decree was rendered in favor of the ward as a compensation for property, the consideration of which had come into the plaintiffs' hands by virtue of a supposed legal sale of the ward's estate by the plaintiffs, as his guardians. While the plaintiffs held the proceeds of such property, they were bound to account for it, and were required so to do by decree of the probate court. But subsequently, by the act of the ward, or of his new guardian, the sale was avoided, and the plaintiffs were compelled to refund the money to the purchaser of the land.

The decree of the judge of probate was based *on an account rendered* on a supposed legal sale of the ward's property ; and it is as much interfering with that decree, for the ward to deny the sale of the property, or attempt to rescind or avoid it, as it is, when such sale has been avoided, for the plaintiffs to reclaim the money allowed on account of said sale.

Neither of them affect the judgment of the court. It is the act of the defendant subsequent to the decree that gives the plaintiffs their cause of action. The defendant, by claiming and appropriating to his own use the property for which the plaintiffs had paid him the sum now sued for, divests himself of the right to retain the money. He cannot retain both ; and he has in his hands, according to all received principles of law, money had and received to the plaintiffs' use. It is the ordinary case of an attempt to recover back money paid on a consideration which has failed.

In *Williams* vs. *Reed and Trustee, 5 Mass.* 480, a guardian sold lands of his ward under a license of court, without taking the oath and giving bonds as required by law. It was holden that the purchaser, after having paid a part of

the consideration, might refuse to take a deed and recover back the money. In this case, if the new guardian refuses to ratify the sale, or revokes it on account of like defects, the plaintiffs may, on the same ground, recover their money.

In the case, *Shearman and al.* vs. *Akins*, 4 *Pick.* 283, which is almost precisely like this case, an action for money had and received was sustained, and the decree of the judge of probate was considered as no bar to sustaining the action.

*Judgment for plaintiff.*