[L. A. No. 616.   Department Two.—September 12, 1900.]

## J. H. MADDUX, Appellant, v. COUNTY BANK OF SAN LUIS OBISPO, Respondent.

MORTGAGE—DEFAULT JUDGMENT — PAYMENTS TO MORTGAGEE PENDENTE LITE.—A mortgagee who receives the entire amount of the mortgage indebtedness from the proceeds of a foreclosure sale had under a judgment obtained upon the default of the mortgagor to answer the complaint is liable to account to the mortgagor for all moneys received by him between the filing of the complaint in foreclosure and the sale, which by the terms of the contract between them should have been credited on the mort‑ gage indebtedness, but for which no credit was given.

APPEAL from a judgment of the Superior Court of San Luis Obispo County and from an order refusing a new trial. E. P. Unangst, Judge.

The facts are stated in the opinion.

William Shipsey, for Appellant.

W. H. Spencer, for Respondent.

CHIPMAN, C.—Action to recover certain money alleged to have been received by defendant between the filing of a complaint by it on foreclosure and the making of the default decree, and the sheriff's sale thereunder, for which no credit was given. Defendant had judgment, from which and from the order denying his motion for new trial plaintiff appeals. The complaint sets forth the following among other facts:

Plaintiff and one Branch executed a mortgage on certain lands to First National Bank of San Luis Obispo to secure the payment of their note for eleven thousand seven hundred and seven dollars and eighty-one cents; the mortgagee subsequently assigned the note and mortgage to defendant bank, and to this latter bank Branch gave an additional mortgage to secure the payment of the same note; when the first note and mortgage were executed, and contemporaneously therewith, the mortgagee entered into a written agreement with the mortgagors by which the mortgagee agreed to release certain of

the lands to grantees of the mortgagors upon payment to it of certain amounts per lot of certain lands and a certain amount per acre of certain other lands; this agreement was assigned to defendant with the note and mortgage and became the agreement of defendant; on June 17, 1896, defendant commenced its action to foreclose the mortgages, at which time there was due on the note a certain sum not now disputed. Branch, this plaintiff and certain of their grantees were defendants, and Branch and Maddux (plaintiffs here) were duly served with summons, but did not appear in the action and their default was entered, and on April 13, 1897, a judgment of foreclosure was duly made and entered by default, and on May 15, 1897, sufficient of the mortgaged lands were sold by the sheriff to pay the amount due on the note, principal and interest and costs and charges of foreclosure, and the judgment was satisfied. It is alleged that between the commencement of the suit and the foreclosure sale the sum of five thousand five hundred and sixty-four dollars was paid to defendant by grantees of Branch and Maddux and by themselves for the purpose of obtaining releases of certain of the mortgaged lands, which by the agreement aforesaid defendant agreed to credit on the mortgage note, but that it credited thereon only four thousand one hundred and fifty-six dollars and leaving a balance of fourteen hundred and eight dollars, for which no credit was given on the note or on the judgment.

The foregoing facts are sufficient to an understanding of the only point presented for decision.

Plaintiff called the cashier of defendant bank as a witness, by whom he sought to prove payments made to the bank after the foreclosure suit was commenced which were not credited on the note or on the judgment before sale. Some of these payments were alleged to have been made both before and after judgment. The evidence was refused by the court upon the objection that plaintiff was estopped by the judgment to prove any such payments. Plaintiff was also sworn as a witness in his own behalf to make similar proof, but the evidence was refused on the same grounds. Both parties seem to agree that the question is fairly presented and is the only question involved in the appeal, as it is the only question discussed.

No greater effect is imparted by the adjudication of a fact denied than is imparted by an adjudication of the same fact after being expressly admitted, or admitted by implication, as in the case of default. (Freeman on Judgments, sec. 330, and cases there cited.) A judgment by default stands on the same footing as a judgment after answer and trial with respect to issues tendered by the plaintiff's complaint. Mr. Freeman says that the general expression, often found in the reports, that a judgment is conclusive of every matter which the parties might have litigated in the action is misleading. (Freeman on Judgments, sec. 249.) He says: "It may be that the plaintiff might have united other causes of action with that set out in his complaint, or that the defendant might have interposed counterclaims, cross-bills and equitable defenses, or either of the parties may have acquired new rights pending the litigation, which might, by permission of the court, have been pleaded by supplemental complaint or answer, and therefore might have been litigated in the action. But as long as these several matters are not tendered as issues in the action they are not affected by it. . . . . The defendant must bring forward all the defenses which he has to the cause of action asserted in the plaintiff's pleadings at the time they were filed."

In some early cases in Massachusetts it was held that in a suit on a promissory note where the defendant made default he could afterward sue the plaintiff in that action for money paid but not credited on the note (*Fowler v. Shearer,* 7 Mass. 14; *Rowe v. Smith,* 16 Mass. 306); and it was so held at one time in New York. (*Smith v. Weeks,* 26 Barb. 463.) But in the later cases in both of those states the earlier cases were expressly overruled. (*Fuller v. Shattuck,* 13 Gray, 70; *Binck v. Wood,* 43 Barb. 315, affirmed by the court of appeals.) Mr. Bigelow cites several cases where it was held that partial payments made before suit cannot afterward be recovered whether the defendant in the original action made default or answered. (Bigelow on Estoppel, 76, 77.) In *Binck v. Wood, supra,* the court said: "The law cannot uphold the trust and faith that allow a man to lie by, as the plaintiff here did in the first suit, and rest upon the belief that the plaintiff there would not do what in the summons or complaint he had expressly notified

this plaintiff he would do, namely, take judgment for the whole amount of the note, and then maintain an action to recover back part of the judgment on the ground that his just confidence had been betrayed." In that case, however, the partial payment claimed to have been made and not credited was made before suit was commenced. Commenting upon this case and the doctrine held in like cases Mr. Bigelow says: "This appears to be the better opinion. The meaning simply is that judgment by default, like judgment on contest, is conclusive of what it actually professes to decide as determined by the pleadings; in other words, that facts are not open to further controversy if they are necessarily at variance with the judgment on the pleadings."

I find cases decided in other states in support of the rule laid down in Massachusetts and New York, where partial payments had been made both before and after suit brought, and the defendant had appeared in the action but failed to set up the payments in defense. In these cases he was held estopped from recovering afterward by separate action.

But I find no case where the defendant did not appear and plaintiff had a default judgment, that the defendant was estopped from recovering money received by the plaintiff after the action was commenced that should have been but was not credited on the claim sued upon or taken account of in the judgment.

When the defendant fails to appear to the action, and allows his default to be entered, he admits the truth of the facts alleged in the complaint and all facts necessarily incidental to such facts and to the enforcement of the claim there set forth. Branch and Maddux, for example, in the present case, admitted that they were indebted to plaintiff in the foreclosure suit the sum claimed in the complaint when it was filed; they did not admit anything beyond this as to the indebtedness. Obviously, they did not admit that the plaintiff might take judgment for the full amount claimed, notwithstanding money might come into plaintiff's hands from third parties which it had agreed to credit on the note and which in conscience it was its duty to so credit. The best and most invariable test as to whether a former judgment is a bar, says Mr. Freeman, is to inquire

whether the same evidence will sustain both the present and the former action. (Freeman on Judgments, sec. 259.) The evidence which justified the judgment against Branch and Maddux in the foreclosure suit was their admission that at the time the complaint was filed they were indebted the amount therein claimed. The admission related to the facts as they existed at the commencement of the action. If at that time the plaintiff claimed too much, and there had been payments previously made which were not credited, it was the duty of the defendants in that action to so show by answer, as we have already seen, or they would be estopped; but the reason underlying this rule does not apply where it appears, as here, that money came into the hands of the plaintiff in the foreclosure suit, after suit brought, which it had agreed to credit but failed to do so, and of which defendants in that suit had no knowledge. The defendants might well have allowed their default to stand, relying on the plaintiff to make the proper credits before judgment, or if paid after judgment to still give the credit before enforcing the judgment. It would be unconscionable to allow the plaintiff in such a case to shield himself by claiming that the defendant is estopped to prove that the plaintiff received the money and failed to credit it. It is true that the judgment, though for too great an amount, could be enforced unless set aside by some appropriate proceeding. But we do not think it can be used as a shield to protect the plaintiff in that action from liability for money received by plaintiff under the circumstances alleged in this case. As was said in *Barton v. Anderson,* 104 Ind. 578: "The general rule is that a default is only conclusive as to such matters as are properly averred or charged in the complaint." (See, also, Bigelow on Estoppel, 85. See, also, *Cromwell v. Sac County,* 94 U. S. 351, for a clear statement of the rule by Mr. Justice Field.)

Respondent relies upon *Woolverton v. Baker,* 98 Cal. 628, and *Reed v. Cross,* 116 Cal. 473. In both these cases it clearly appeared that the precise point in issue in the second action was litigated in the first. In both cases there were answers and the causes were fully tried. The distinction we make in the application of the principles enunciated in the two cases cited is that the facts adjudged in the foreclosure suit against Branch

and Maddux, so far as related to their indebtedness, and so far as the doctrine of estoppel applies to such indebtedness, were the facts as they existed when the complaint was filed. In the Woolverton case it was held that the plaintiff had no new cause of action for rents accruing subsequent to the judgment, because in the former action it was determined that the defendants held the land freed from any conditions set forth in the plaintiff's complaint in the last action; in other words, the very issue presented in the last case was determined against Mrs. Woolverton in the former case.

In the present case the plaintiff alleged that defendant received money, which under its agreement should have been credited but was not, during every month after the action was commenced, up to the month in which the sheriff's sale occurred. How far he could have established his case by evidence we cannot know, for the trial court held him estopped to make any proof of his allegations. We think the court erred and that a new trial should be granted.

It is advised that the judgment and order be reversed.

Haynes, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Henshaw, J., Temple, J., McFarland, J.